

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 513-904-0249 (T-Mobile US, Inc.) | CASE NO. **1:17MJ-732**<br>**UNDER SEAL** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Tyler D. Field, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the locations of the cellular telephones assigned call number **513-904-0249** (the "Subject Telephone"), whose service provider is T-Mobile US, Inc., a wireless provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The targeted cell phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA") and have been so employed since March 2016. I also serve as a U.S. Army Military Police Captain in the Indiana Army National Guard and have over sixteen years of service. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I have graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During these courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for

violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21 of the United States Code).

3. I am currently assigned to the Cincinnati Resident Office of the DEA. I have received specialized training from the DEA, including the 18-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by Ernest JACKSON, Christopher ELLISON, and other as-yet unknown individuals. I believe there is probable cause that the **Subject Telephone** is being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **Subject Telephone** will constitute evidence of those criminal violations,

and will lead to the identification of individuals who are engaged in the commission of these offenses.

## THE RELEVANT FACTS

6.      In April 2017 Christopher ELLISON was arrested by the Cincinnati Police Department for trafficking in drugs, possession of drugs, aggravated trafficking in drugs, and aggravated possession of drugs. Following the arrest, a mobile telephone assigned telephone number 513-223-8331 was seized from ELLISON. On June 26, 2017, the Cincinnati Police Department extracted the contents of the telephone pursuant to a search warrant. According to the extracted contents of the mobile telephone, the most frequent contact of telephone number 513-223-8331 was telephone number 513-952-0222. According to law enforcement databases, Ernest JACKSON provided telephone 513-952-0222 following a traffic stop conducted by the Cincinnati Police Department on April 3, 2017. Consequently, I believe that ELLISON, using 513-223-8331 was communicating with JACKSON, using 513-952-0222.

7.      On April 21, 2017, ELLISON, using 513-223-8331, received a text message from 513-952-0222 that said "Half lick already there and half lick bout to pull up." Based on my training, experience, and my knowledge of both ELLISON's and JACKSON's criminal records as known drug traffickers, I believe that JACKSON was telling ELLISON that a customer of the drug trafficking organization (DTO) who had ordered a half gram of heroin/fentanyl was at a location that ELLISON was going to in order to distribute heroin/fentanyl and another customer who had also ordered a half gram of heroin/fentanyl was almost at that location.

8.      On August 30, 2017, I submitted an administrative subpoena for subscriber and call records for 513-952-0222. According to the call records, 513-952-0222 was deactivated on August 4, 2017.

3

9. Between July 26, 2017 and September 21, 2017, agents/officers have conducted six controlled purchases of less than 1 gram of suspected heroin/fentanyl from the DTO by calling 513-557-1762. According to call records for 513-557-1762, between June 25, 2017 and September 22, 2017 there were at approximately 10,734 incoming communications to 513-557-1762 and 731 outgoing communications. Based on my training, experience, the six controlled purchases agents/officers conducted by calling 513-557-1762, the high volume of incoming communications, and the comparatively low volume of outgoing communications, I believe that 513-557-1762 is used by the DTO almost exclusively to distribute heroin/fentanyl.

10. According to law enforcement databases, JACKSON had also provided telephone number 513-383-2686 to the Ohio State Highway Patrol following a traffic stop on December 26, 2017. On September 22, 2017, I submitted an administrative subpoena for subscriber and call records for 513-383-2686. According to the subscriber records, 513-383-2686 was subscribed to "John Travolta" at 1200 Race Street, Cincinnati, Ohio on December 18, 2016 and was deactivated on September 8, 2017. The International Mobile Equipment Identity (IMEI) for the device to which 513-383-2686 was assigned was13988008422320. Based on my training and experience, I believe that 513-383-2686 was subscribed to a fictitious name, which I know to be a common practice amongst drug traffickers in order to avoid detection from law enforcement.

11. According to call records, 513-383-2686 communicated with 19 telephones that 513-952-0222 also communicated with. Based on my knowledge that JACKSON previously provided telephone numbers 513-383-2686 and 513-952-0222 to law enforcement and my knowledge that 513-383-2686 and 513-952-0222 have communicated with 19 of the same telephone numbers, I believe that JACKSON used both telephones.

12. According to call records, 513-383-2686 called 513-557-1762 at least five times on August 19, 2017. Based on my belief that, JACKSON previously communicated with ELLISON about distributing heroin/fentanyl using 513-952-0222, the six controlled purchases that agents/officers have conducted by calling 513-557-1762, and my belief that 513-557-1762 is used by the DTO almost exclusively to distribute heroin/fentanyl, I believe that when JACKSON was communicating 513-557-1762 he was communicating with other members of the DTO regarding the distribution of heroin/fentanyl.

13. On September 25, 2017, I requested subscriber and call records for 10 frequent contacts of JACKSON's previous phones 513-383-2686 and 513-952-0222. Through call record analysis, I learned that five of these numbers began calling **513-904-0429** (the **Subject Telephone**) on or around September 8, 2017. According to subscriber information, the **Subject Telephone** was subscribed on September 8, 2017 to "John Travolta" at 1200 Race Street, Cincinnati, Ohio. The IMEI for the device to which the **Subject Telephone** is assigned is 13988008422320. Based on my training, experience, my belief that JACKSON previously used 513-383-2686 to communicate with 513-557-1762 regarding the distribution of fentanyl, my knowledge that 513-383-2686 was deactivated on September 8, 2017, my knowledge that the **Subject Telephone** was subscribed on September 8, 2017 to the same subscriber name, address, and device IMEI as 513-383-2686, I believe that JACKSON has simply shifted his heroin/fentanyl trafficking activities to the **Subject Telephone.**

14. Based on the information set forth in this affidavit, I believe there is probable cause to believe that the user of the **Subject Telephone** is engaged in ongoing criminal activity, specifically in violation of Title 21 U.S.C. §§ 841(a)(1) and 846. I believe there is probable cause

5

that information requested will assist law enforcement in identifying, dismantling and disrupting the this DTO's illegal drug dealing activities.

15. In my training and experience, I have learned that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that wireless phone companies can collect E-911 Phase II data about the location of the target cell phone, including by initiating a signal to determine the location of the target cell phone on T-Mobile US, Inc.'s network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that wireless phone companies can also collect cell-site data about the target cell phone.

6

## AUTHORIZATION REQUEST

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscribers or users of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give those people an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

20. I further request that the Court direct T-Mobile US, Inc. to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile US, Inc.. I also request that the Court direct T-Mobile US, Inc. to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile US, Inc. services, including by initiating a signal to determine the location of the target cell phone on T-Mobile US, Inc.'s network or with such other reference

points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance.

21. I further request that the Court authorize the government to install and operate a cell-site simulator to obtain dialing, routing, addressing, and signaling information from the target cell phones to determine the locations of the target cell phones.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cell phone outside of daytime hours. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 29th day of September 2017.

_____
HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **513-904-0249** whose wireless service provider is T-Mobile US, Inc. a wireless telephone service provider headquartered at 6480 T-Mobile US, Inc. Parkway, Overland Park, Kansas 66251.

2. Information about the location of the cellular telephone assigned call number **513-904-0249** (the "Subject Telephone") that is within the possession, custody, or control of T-Mobile US, Inc. including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Subject Telephone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Subject Telephone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the Subject Telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile US, Inc., T-Mobile US, Inc. is required to disclose the Location Information to the government. In addition, T-Mobile US, Inc. must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile US, Inc. services, including by initiating a signal to determine the location of the Subject Telephone on T-Mobile US, Inc.'s network, or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile US, Inc. for reasonable expenses incurred in furnishing such facilities or assistance. In addition, the government may initiate a signal to determine the location of the Subject Telephone.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).